STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD ALLEN NANCE and | ) | CASE NO. 09-05604-JKC-13 |
| JENNIFER LYNN NANCE, | ) | |
| | ) | |
| Debtors. | ) | |

**DEBTORS' BRIEF IN RESPONSE TO CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION**

Come now the Debtors, Richard Allen Nance and Jennifer Lynn Nance, by counsel, and for their Brief in Response To Chapter 13 Trustee's Objection To Confirmation state as follows:

**ISSUE**

Can the Debtors exclude the receipt of unemployment compensation in the calculation of their disposable monthly income pursuant to 11 U.S.C. §101(10A) pursuant to the plain language of the Code and legislative intent?

**ACKNOWLEDGEMENT**

Debtor's brief incorporates research and analysis from the brief filed by Debtors/Debtors' counsel in *In re Treece*, Case No. 09-33290, United States Bankruptcy Court, Southern District of Illinois.

**ARGUMENT**

I. **UNDER A PLAIN LANGUAGE READING OF THE STATUTE, UNEMPLOYMENT COMPENSATION SHOULD BE EXCLUDED FROM CURRENT MONTHLY INCOME BECAUSE IT FALLS SQUARELY WITHIN THE TERM "BENEFITS RECEIVED UNDER THE SOCIAL SECURITY ACT."**

The Supreme Court has consistently employed a strict plain meaning rule for the Bankruptcy Code. See *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004); It has been well established that when the "statute's language is plain, the sole function of the court, at least where the disposition required by the text is not absurd, is to enforce it according to its terms." *Hartford Underwriters*, 530 U.S. at 6. (internal quotations omitted). Moreover, if the plain language of a statute appears to contradict its philosophical foundation, it is not the role of the courts to redraft the statute to bring the two into alignment. "If Congress

1

enacted into law something different from what it intended, then it should amend the statute to conform to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result." *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring).

Section 101(10A)(A) described CMI as: "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income." Section 101(10A)(B) excludes from the current monthly income "benefits received under the Social Security Act." A plain language interpretation of Section 101(10A)(B) leads to the conclusion that unemployment compensation, which is a substantial component of the SSA and is regulated and funded by the Department of Labor and the FUTA, is a "benefit received under the Social Security Act."

At leave five courts and many commentators have reviewed this issue. The cases holding that unemployment income should be considered as a benefit under the social security act include *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007). Cases holding that unemployment income does not qualify as a benefit received under the Social Security Act *In re Kucharz*, 418 B.R. 635 (Bankr. C.D.Il. Oct 28, 2009); *In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa.. 2008) and an unreported decision in Alabama in the case of *In re Washington*, Case No. 09-30014 (Bankr. M.D. Ala., May 21, 2009), which is on appeal to the District Court.

A. **UNEMPLOYMENT INCOME SHOULD NOT BE INCLUDED IN THE CALCULATION OF CURRENT MONTHLY INCOME.**

Based upon the plain language of the statute, unemployment compensation benefits should be excluded from currently monthly income. See *Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007); *In re Munger*, 370 B.R. 21 (Bankr. D. Mass. 2007); 2 COLLIER ON BANKRUPTCY 101.10A (Alan N. Resnick & Henry J. Sommer., 16th ed.) (noting that unemployment benefits are provided for in several Titles of the Social Security Act), David W. Allard, *Means Testing, Dismissal & conversion Under the New Law*, 24-6 Am. Bankr. Inst. J., 8, 74 (July 2005) ("[U]nemployment compensation was also excluded from CMI because it appears that it is a benefit received under the Social Security Act."); David Gray Carlson, *Means Testing: the Failed Bankruptcy Revolution of 2005*, 15 Am. Bankr. Inst. L. Rev., 223, 262-63, (Spring 2007)

2

(referring favorably to *Sorrell's* reasoning for finding that unemployment compensation is a benefit received under the Social Security Act); Henry J. Sommer, *Trying to Make Sense out of Nonsense: Representing Consumers Under the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005"*, 79 Am. Bankr. L.J. 191, 195(2005) (unemployment compensation benefits provided for under Titles III, XII, XIII, and XV of the Social Security Act).

In finding that unemployment compensation is a "benefit received under the Social Security Act," the court in *Sorrell* began its analysis with the premise that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." 359 B.R. at 177 (quoting *Exxon Mobil Corp. v. Allapattah Svcs., Inc.,* 545 U.S. 546, 568 (2005)). It proceeded to review the arguments set forth by the Trustee within that framework.

First, the Sorrell court rejected the Trustee's arguments that the phrase "benefits under the Social Security Act" was limited to direct payments from the federal government. The court noted that the statute did not limit the broad term "benefits" to direct payments. The Sorrell court also examined other sections of the Bankruptcy Code that refer to benefits under the Social Security Act. Specifically, the court compared section 362(b)(2) (exceptions to the automatic stay for child support under §466 of the SSA), section 704(c)(1)(A)(i) (duties of the Trustee with respect to state child support agencies created under the SSA), and section 1302(d)(1)(A)(i) (same), to the language employed in section 101(10A)(B). Relying on the rule that "congressional enactments which contain particular language in one section of a statute, but omit such particularity in another section, reflect Congress' intention and purpose in such disparate use," the court concluded that the broader language of section 101(10A)(B) reflected an intention to provide broader coverage of the Act in its entirety. *Sorrell*, 359 B.R. at 183.

Finally, the court held that:

> [I]n consideration of the text of various relevant portions of the Social Security Act, United States Supreme Court language, and a comparison with other statutory text of the 2005 Ac5, which reference specific provisions of the Social Security Act, the court holds that unemployment compensation is one of the 'benefits under the Social Security Act.'

*Id.*

3

The court in *Munger* adopted this reasoning. Based upon "canons of statutory construction and the *Sorrell* decision," the *Munger* court found that unemployment compensation is excluded from current monthly income pursuant to section 101(10A)(B). 370 B.R. at 26. Like *Sorrell*, the court noted that when Congress intended to draw a distinction between specific social security provisions it did so expressly, as in the case of section 522(d)(10), which provides that a debtor may claim as exempt:

(A)  a social security benefit, unemployment compensation, or a local public assistance benefit;

(B)  a veterans' benefit;

(C)  a disability, illness, or unemployment benefit;

(D)  alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E)  a payment under a ... plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor ...

The court found that the phrase "social security benefit," as used in section 522(d), was narrower than the phrase "benefits under the Social Security Act, as used in section 101(10A)(B):

[T]he phrase [benefits received under the Social Security Act] is intentionally broad. Sections of the Bankruptcy Code distinguish 'unemployment compensation' from 'a social security benefit.'... The way which Congress chose to phrase the references in the sections supports the view that 'a benefit received under the Social Security Act' in §101(10A)(B) was *purposefully intended to be broader than 'a social security benefit.'* 'Unemployment compensation' is included in this broader definition.

370 B.R. at 25-26 (emphasis added).

This Court should adopt the holdings of *Sorrell* and *Munger* and should find, based upon the plain language of the statute, that unemployment compensation is a benefit received under the SSA and should be excluded from the calculation of CMI.

**B.   THE OPINION OF THE COURTS IN *KUCHARZ*, *BADEN* and *WASHINGTON* WERE INCORRECTLY DECIDED.**

**a.   ANALYSIS OF THE *BADEN* AND *WASHINGTON* OPINIONS.**

The Court in *In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008) case essentially relied upon four

4

propositions for its conclusion that unemployment compensation was found not to be a "benefit received under the Social Security Act" within the meaning of section 101(10A)(B). These four propositions include: (1) that the congressional intent behind the BAPCPA and the amendments it made to section 709(b) was to ensure that all income be included in the calculation of current monthly income; (2) that comparison with the language of section 522(d)(10) indicates that Congress deemed unemployment compensation to be a benefit separate from social security; (3) that "benefits received under the Social Security Act" refers to benefits wholly funded, administered and paid by the federal government; and (4) that current monthly income should be calculated according to the Internal Revenue Code's definition of gross income.

Debtors maintain that, for the following reasons, *Baden* was wrongly decided and should not be followed by this Court.

i. **There is no Congressional mandate that debtors be required to include unemployment compensation in the calculation of CMI under the means test.**

As an initial matter, the *Baden* court determined that interpretation of section 101(10A)(B) could not be based solely on the text of the provision, finding that there is an inherent ambiguity in that language. Specifically, the Court stated:

> It is unclear whether a 'benefit received under the Social Security Act,' was meant to be all encompassing since it did not refer to a specific provision of the act or whether it was an alternative way of referring to social security benefits, which are distinguished from unemployment compensation in other provisions. Since the language of this provision is unclear, it is necessary to look beyond the plain language to correctly interpret the statute.

396 B.R. at 622.

The Court then turned to the legislative history of the BAPCPA for guidance and found that Congress had two primary concerns: "(1) Protecting the Bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay; and (2) protecting education and retirement savings from being drained by creditors." *Id*. The Court concluded that excluding unemployment compensation from the calculation of CMI would be antagonistic to both concerns.

5

Specifically, the Court stated that "[a]llowing the unemployed to retain any excess funds they receive while failing to pay their bills runs contrary to Congress' goal of preventing abuse by those who can afford to pay a portion of their bills." *Id.*

This position was addressed and rejected by the courts in *Sorrell* and *Munger*. The Court in *Sorrell*, warned against placing too much emphasis on the oft-cited phrase, "Those who can pay, should pay," noting that Congress itself did not always adhere to this principle, specifically excluding other sources of income, including certain retirement funds, repaid loans, and charitable contributions, from consideration of the debtor's ability to pay. *Sorrell*, 359 B.R. at 178; *see also In re Barfknecht*, 378 B.R. 154 (Bankr W.D. Tex. 2007) (no bad faith where chapter 13 debtor retains social security disability benefits even though inclusion of such benefits in the estate would significantly increase repayment to creditors). See also *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007).

Similarly, the Court is not persuaded that the "clear" goal of BAPCPA was to "ensure that debtors repay creditors the maximum they can afford." In re: Zimmerman, 2007 Bankr. LEXIS 410, 2007 WL 295452, at *8 (Bankr. N.D. Ohio 2007) (citing H.R. Rep. No. 109-31). Congress excluded several sources of income from the disposable income calculation, including repayment of 401(k) loans and Social Security Act benefits, thereby calling into doubt whether maximum repayment to creditors was its main intent. See In re Hanks, 362 B.R. 494, 500 (Bankr. D. Utah 2007) (questioning whether maximum repayment was the goal of BAPCPA). Further, by focusing on repayment to creditors as Congress' ultimate goal, proponents of this approach ignore other potential competing goals of Congress under BAPCPA, particularly the desire to eliminate judicial discretion. Id. It is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors, and the calculation methods for determining "projected disposable income" that a major goal of Congress was to replace judicial discretion with specific statutory standards and formulas.

Id. At 366.

Contrary to the conclusion in *Baden*, while the BAPCPA may have had as its impetus the desire to curtail perceived abuse of Chapter 7 bankruptcy, it did not eradicate the original intent of the bankruptcy laws to afford a debtor a fresh start by protecting certain assets and income from creditors. *See* Jensen, *supra*, at 490 (the original intent of Chapter 7 bankruptcy was to serve the public good by distribution of a debtor's assets and allowing him to enjoy a fresh start). *Baden* invoked congressional concerns that may relate to broad issues addressed by the 2005 legislation, but they do not relate to the

6

specific amendment at issue here. In fact, there is no inherent contradiction between the purposes behind the BAPCPA and the preservation of monies received under the SSA. The exclusion from CMI of *all* benefits received under the SSA promulgated the congressional purpose of protecting Americans from the financial burdens created by loss of employment. This founding principle of the SSA also underlies the BAPCPA. As noted by the *Sorrell* court, Congress' desire to retain the balance between the two competing interests is evidenced by its protection of a variety of debtor's assets.

The congressional record is also clear that Congress sought to protect unemployment benefits. Both Rep. Conyers and Sen. Kennedy emphasized loss of employment income in presenting to Congress the amendment that became section 101(10A)(B). *See* Section IIA, *supra*. Moreover, when Representative Conyers presented the amendment to the House, he explicitly offered it as a means to protect a debtor's unemployment compensation. These amendments passed without challenge.

Therefore, while the passage of the BAPCPA reinforced and strengthened the abuse prevention aspects of the bankruptcy laws, it did not do away with the consumer protection component. The *Baden* court analyzed congressional intent with no specific discussion of the language at issue and cannot be deemed persuasive in the current debate.

If Congress intended to limit its exclusions from CMI in the manner suggested by the UST, it knew how to do so. The fact that it did not is a clear indication that courts should not impose their own judicial limitations in contravention of the clear statutory language and legislative history.

      ii.    **Congress' separation of unemployment compensation from "social security benefits" in section 522(d)(10) is not an indication that Congress intended to treat unemployment compensation as outside the Social Security Act for purposes of section 101(10A)(B).**

The *Baden* court's analysis of the statutory text as compared to other provisions in the Code is likewise erroneous. In comparing text of section 101(10A)(B) with the other language in the Code, the *Baden* court cited only section 522(d)(10) as an example of a specific provision in which Congress distinguished unemployment benefits from the benefits available under the SSA. Where *Munger* relied

7

on section 522(d)(10) as evidence that Congress knew how to distinguish between specific benefits when it intended to do so, the *Baden* court cites that provision as evidence that Congress intended to exclude unemployment compensation from the definition of "social security benefits" and, therefore, include unemployment compensation in the calculation of CMI:

> [T]his Court views the distinction between unemployment compensation and social security benefits [in §522(d)(10)] as a manifestation of Congress' intent that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily administered by the federal government.

*Baden*, 396 B.R. at 621.

This conclusion steadfastly ignores the basic principle of statutory construction that differing language in two provisions of an Act be given different meanings. *Russell v. United States*, 404 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each."). By equating Congress' reference to "social security benefits" in section 522(d), and the reference to "benefits received under the Social Security Act" in § 101(10A)(B), the *Baden* court failed to recognize the significance of the different language that Congress employed in the two provisions. That Congress chose different, and broader, language in section 101(10A)(B) supports the view that "benefits received under the Social Security Act," as used in that section, enjoys the broadest possible construction.

The *Baden* court's interpretation of the disparate terms also ignores the historical and colloquial meaning of the term "Social Security benefits." Since 1935, when the SSA was enacted, the term "social security" has frequently been used to refer to the Federal Old Age, Survivors, Disability and Hospital Insurance program (consisting of federal old age benefits and Medicare). Wilbur J. Cohen, *The Development of the Social Security Act of 1935: Reflections Some Fifty Years Later*, 68 Minn L.Rev. 379, 380, 397 (1983). Congress referred to "social security benefits" in section 522(d)(10) and then went on to separately list other benefits that find their genesis in the Social Security Act, such as disability, public assistance, and unemployment benefits. It is reasonable to conclude that the reference to "social security benefits" – without reference to the SSA itself – was limited to the colloquial understanding of that term.